Kalman v. SSA                           CV-03-022-M    04/20/04

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Mary Lou Kalman,
f/k/a Mary Lou Bugyi,
     Claimant

     v.                                   Civil No. 03-022-M
                                          Opinion No. 2004 DNH 070
Jo Anne B. Barhnart,
Commissioner, Social
Security Administration,
     Respondent


**O R D E R**


     Pursuant to 42 U.S.C. § 405(g), Mary Lou Kalman moves to

reverse the Commissioner's decision denying her application for

supplemental security income, or SSI, under Title XVI of the

Social Security Act, 42 U.S.C. § 1382.  The Commissioner, in

turn, moves for an order affirming her decision.  For the reasons

given below, the decision of the ALJ is affirmed.


**Standard of Review**

     The applicable standard of review in this case provides, in

pertinent part:


     The [district] court shall have power to enter, upon
     the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without
remanding the cause for a rehearing.  The findings of
the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive
. . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(c) (establishing §

405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . . benefits

unless 'the [Commissioner] has committed a legal or factual error

in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of

HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson,

490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's

findings of fact be supported by substantial evidence, "[t]he

substantial evidence test applies not only to findings of basic

evidentiary facts, but also to inferences and conclusions drawn

from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-

18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730

(2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than

[a] mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

## Background

The parties have submitted a Joint Statement of Material Facts (document no. 15), which is part of the court's record. The facts included in that statement are not recited here, en masse, but will be referred to as necessary.

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).

In the proceeding that gave rise to this appeal, the ALJ posed the following hypothetical question to the Vocational Expert ("VE"):

> I'm going to ask you some questions taking into account different pieces of information, but if we (INAUDIBLE) worker (INAUDIBLE) high school equivalency, and having done work both at the entry level and the skilled level, if we are looking at (INAUDIBLE) instruction (INAUDIBLE) if we are looking at situations where an individual (INAUDIBLE) interaction with other people and by that I mean more than one or two people at one time (INAUDIBLE) be effectively on a one-on-one basis (INAUDIBLE) setting, and perhaps the job is not required over the shoulder close supervision, now looking at the types of jobs that she has performed, do you feel with these limitations any of these jobs could still be done?

(Administrative Transcript ("Tr.") at 285-86.) In response, the VE listed five jobs (storage area clerk, packager, small parts assembler, housekeeper, and companion) that claimant would be able to perform with the limitations stated in the ALJ's hypothetical question. At the conclusion of his decision, the ALJ made the following relevant findings:

> 4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> . . .

4

6.    The claimant has the residual functional capacity to lift at least 50 pounds occasionally and up to 25 pounds frequently consistent with medium exertional activity, but for the need for no more than minimal interaction with others and she is limited to performing simple instructions.

. . .

11.    The claimant has the residual functional capacity to perform a significant range of medium work (20 CFR § 416.967).

12.    Although the claimant's exertional limitations do not allow her to perform the full range of medium work, using Medical-Vocational Rule 201.27, Table No. 1 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as storage area clerk, packager, small parts assembler, housekeeper and companion.

(Tr. at 250.)  Based upon the foregoing findings, the ALJ ruled that claimant was not eligible for SSI benefits.  (Id.)

## Discussion

According to claimant, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) erroneously found claimant's subjective allegations to be not fully credible; (2) made a residual functional capacity assessment that was not supported by substantial evidence in the record; and (3) based

5

his decision on a legally insufficient hypothetical question to the Vocational Expert. Claimant also argues that the case should be remanded because the Commissioner has failed to provide an adequate transcript of the hearing before the ALJ.

To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The principal issue in this case is whether the ALJ correctly determined that claimant was not disabled because she retained the residual functional capacity to perform jobs available in the national economy.

For the purpose of determining eligibility for supplemental security income,

> [a]n individual shall be considered to be disabled for
> purposes of this subchapter if he is unable to engage
> in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment
> which can be expected to result in death or which has
> lasted or can be expected to last for a continuous
> period of not less than 12 months. . . .

42 U.S.C. § 1382c(a)(3)(A). Moreover,

For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his [her] physical or mental impairment or impairments are of such severity that he [she] is not only unable to do his [her] previous work but cannot, considering his [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [she] lives, or whether a specific job vacancy exists for his [her], or whether he [she] would be hired if he [she] applied for work. . . .

42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process. See 416.920 (SSI).

The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is

7

> unable to do any other work, the application is
> granted.

Seavey v. Barnhard, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).


The claimant bears the burden of proving that she is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at Step
> 4 to show that he or she is unable to do past work due
> to the significant limitation, the Commissioner then
> has the burden at Step 5 of coming forward with
> evidence of specific jobs in the national economy that
> the [claimant] can still perform.  Arocho v. Sec'y of
> Health & Human Servs., 670 F.2d 374, 375 (1st Cir.
> 1982).  If the [claimant's] limitations are exclusively
> exertional, then the Commissioner can meet her burden
> through the use of a chart contained in the Social
> Security regulations.  20 C.F.R. § 416.969; Medical-
> Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P,
> App. 2, tables 1-3 (2001), cited in 20 C.F.R. §
> 416.969; Heckler v. Campbell, 461 U.S. 458 (1983).  "The
> Grid," as it is known, consists of a matrix of the
> [claimant's] exertional capacity, age, education, and
> work experience.  If the facts of the [claimant's]
> situation fit within the Grid's categories, the Grid
> "directs a conclusion as to whether the individual is
> or is not disabled."  20 C.F.R. pt. 404, subpt. P, App.
> 2, § 200.00(a), cited in 20 C.F.R. § 416.969.  However,

> if the claimant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, <u>id.</u> § 200(e)) that restrict his [or her] ability to perform jobs he [or she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001). <u>See also</u> <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

<u>Seavey</u>, 276 F.3d at 5 (parallel citations omitted). Finally,

> In assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) plaintiff's subjective claims of pain and disability as supported by the testimony of the plaintiff or other witness; and (3) the plaintiff's educational background, age, and work experience.

<u>Mandziej</u>, 944 F. Supp. at 129 (citing <u>Avery v. Sec'y of HHS</u>, 797 F.2d 19, 23 (1st Cir. 1986); <u>Goodermote v. Sec'y of HHS</u>, 690 F.2d 5, 6 (1st Cir. 1982)).

I. <u>Credibility</u>

Claimant raises three principal objections to the ALJ's finding that her allegations concerning her limitations were not fully credible. First, she offers a seven-point refutation of the ALJ's credibility discussion. Second, she argues that the

9

ALJ "failed to provide a thorough discussion of the medical evidence that is contained in the record." Third, she contends that the ALJ failed to follow the evaluative scheme outlined in Avery v. Secretary of Health & Human Services, 797 F.2d 19 (1st Cir. 1986, 20 C.F.R. § 416.929, and Social Security Ruling ("SSR") 96-7p. The Commissioner contends that the ALJ's credibility determination must be upheld because it was supported by substantial evidence and that the ALJ properly considered the Avery factors.

In her substantive seven-point refutation of the ALJ's credibility discussion, claimant correctly recites the factual bases for the ALJ's conclusion, but draws different inferences from those same facts. Thus, she asks the court to engage in precisely the kind of re-weighing of evidence that falls outside the scope of an appeal such as this. See Irlanda Oritz, 955 F.2d at 769. Moreover, claimant's argument that the ALJ failed to adequately discuss the medical evidence is not persuasive. To the contrary, the ALJ devoted several long paragraphs to claimant's medical records, discussing, in particular, the findings and conclusions of claimant's treating psychiatrist, Dr.

10

Brenda Planck. As well, the ALJ explained his basis for giving greater weight to Dr. Planck's observations than those of claimant's counselor, Ms. Patricia Blakeslee. In sum, the ALJ has adequately considered "the evidence in the record as a whole." Id. Finally, claimant's Avery argument misses the mark in the same way as her refutation of the ALJ's credibility determination. The ALJ's decision demonstrates that he considered the seven factors listed in SSR 96-7p, and claimant does not suggest that the ALJ failed to do so. That the ALJ drew different (but reasonable) inferences than claimant draws from the same evidence does not provide an adequate basis for reversal or remand. See id.

II. Residual Functional Capacity Assessment

According to claimant, the ALJ "attempted to some extent to address the relevant factors" for determining residual functional capacity ("RFC"), but his analysis was flawed in the same way as his credibility determination. As stated above, there are no grounds for re-weighing the evidence considered by the ALJ.

11

Claimant raises several additional objections to the ALJ's RFC assessment. Specifically, she argues that the ALJ: (1) erroneously determined that she had the RFC for substantial gainful activity because he failed to adequately consider her frequent limitations in concentration and attention; and (2) ignored her need to be with people she knew in order to avoid having panic attacks. The Commissioner contends that: (1) having a limitation in concentration, even often, is not inconsistent with having the capacity for unskilled work; and (2) the ALJ did not ignore her difficulties in interacting with strangers.

Regarding concentration and attention, the ALJ stated, in the narrative portion of his decision: "the undersigned notes that the claimant often has limitations with regard to her ability to sustain attention and concentration, however, she enjoys reading and is also able to use a computer." (Tr. at 247.) Accordingly, he determined that claimant had the residual functional capacity to perform simple instructions. In claimant's view, "[i]t is unclear how [a] limitation to performing simple instructions equates to a significant problem with concentration, etc." Thus, according to claimant, the ALJ's

formal "RFC finding should have made some reference to [her] limited concentration and attention" and the omission of any such reference "makes the ALJ's finding incomplete."

The ALJ's finding is not incomplete. His finding that claimant was limited to performing only simple instructions was a logical inference from his narrative discussion of plaintiff's problems with concentration and attention. And again, while the evidence might have been weighed differently, substantial evidence in the record supports the ALJ's finding that concentration problems did not prevent claimant from performing all work and that claimant was capable of performing simple instructions.

Regarding claimant's difficulties in interacting with strangers, the ALJ stated:

> The claimant has asserted that she is unable to perform activities if she is away from her significant others yet she was able to leave her family in New Jersey and move to New Hampshire, establish a relationship with a new boyfriend and his teen-aged daughter and she is able to drive at least short distances and shop for at least short periods.

13

(Tr. at 247). Contrary to claimant's argument, the ALJ did not "totally ignore[] her need to be with other people she knew in order to avoid having a panic attack." Moreover, in addition to the evidence cited by the ALJ, the record also documents claimant's ability to establish personal rapport with the members of her Dialectical Behavioral Therapy Skills Group and to act on some of the skills she learned there. (Jt. Statement Mat. Facts at 12-13.) In short, there is nothing in the ALJ's consideration of claimant's need to be with people she knew that warrants reversal or remand; his finding that she had the residual functional capacity to adapt to work in small group settings is supported by substantial evidence in the record.

III. Hypothetical Question

According to claimant, the ALJ was not justified in relying upon the testimony of the VE, and failed to carry his burden at step five of the sequential evaluation process, because his hypothetical question to the VE failed to include all of claimant's documented functional limitations. Specifically, claimant contends that the ALJ's hypothetical question did not include her limitation with regard to sustaining attention and

14

concentration. The Commissioner counters by citing Dr. Schneider's opinion that claimant "could 'perform activities within a schedule and for the most part, she [could] complete a normal workday and workweek free from [an] unreasonably high number of disruptions to pace.'" As already noted, the ALJ took into account claimant's assertions of difficulties with attention and concentration. However, based upon the evidence before him, including his credibility assessment, he reasonably concluded that those limitations allowed claimant to perform jobs involving simple instructions.

Because there is a logical connection between the general area of limitation asserted by claimant (attention and concentration) and the functional capacity identified by the ALJ (the ability to follow simple instructions) it is incorrect to say that the ALJ's hypothetical question failed to address claimant's abilities in the area of attention and concentration. Rather, he drew a permissible inference, supported by substantial evidence, from the facts before him. In other words, this is not a case in which the ALJ found a particular limitation and then failed to include that limitation in his hypothetical question.

15

Rather, claimant seeks under this theory the same sort of impermissible re-weighing of the evidence that forms the basis for her first two arguments.

IV.  Transcript

The transcript of claimant's administrative hearing is not of high quality, to say the least.  A dozen or so spots marked "INAUDIBLE" would seem to fall within the range of acceptability; more than 130 such notations is far too many.  That said, unless claimant is prepared to argue – and she does not – that the second inaudible word in the ALJ's hypothetical question was "complex," or a synonym thereof, rather than "simple," the poor quality of the transcript provides no basis for remanding this case.  Even with the obvious deficiencies in the transcript, the administrative record, taken as a whole, discloses substantial evidence supporting the decision of the ALJ.

**Conclusion**

For the reasons given, claimant's motion to reverse the Commissioner's decision (document no. 10) is denied and the Commissioner's motion affirming her decision (document no. 14) is

16

granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED**.

_____
Steven J. McAuliffe
United States District Judge

April 20, 2004

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.